THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| | : | |
| PETAL LAYNE FORDYCE | | |
| | : | |
| v. | : | Civil Action No. DKC 08-2265 |
| | : | |
| DOCTORS COMMUNITY HOSPITAL | | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination and Title VII action is a motion for summary judgment (Paper 15) filed by Defendant Doctors Community Hospital. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

**I.   Background**

Plaintiff Petal Layne Fordyce is an African American female who was employed at Defendant Doctors Community Hospital as a Radiology Technologist from May 2005 through April 2008. (Paper 1 ¶¶ 3-4; Paper 15, at 3). Defendant Doctors Community Hospital is a hospital in Lanham, Maryland. (Paper 15, at 3). Over the course of her tenure at the Hospital, Plaintiff had an increasing number of disciplinary issues, and she was reprimanded frequently. These incidents resulted in her leaving

her position at the Hospital in April 2008.  (A dispute exists as to whether she was discharged or she resigned.)

According to Plaintiff and to Defendant's records, during her first year at the Hospital, Plaintiff performed well and received a high score from her supervisor on her performance evaluation.  (Paper 1 ¶ 4).  Plaintiff reports that she had no problems at work prior to the hiring of Mindy Dodson ("Dodson") as her new supervisor.  In October 2007, Dodson was hired by Defendant to be the new Assistant Director of Imaging.  (Paper 15, at 3).  Plaintiff and Dodson both reported to John Wojtowycz, who was the Director of Imaging at the Hospital. (*Id.*).

Defendant presents evidence of several incidents that occurred prior to Dodson's arrival.  In February of 2007, Plaintiff received a written report "for failing to properly transfer a fluid specimen during a lumbar procedure."  (Paper 15, at 4).  In September 2007, a co-worker of Plaintiff's sent an email to the supervisor complaining that Plaintiff was "handling a matter illogically and against the best interest of the patients or flow of the department."  (Paper 15, at 4). Several other co-workers also filed complaints that Plaintiff was uncooperative, and one co-worker noted that she was "disruptive and cause[d] trouble."  (Paper 15, at 4-5).

Plaintiff's description of her issues at the Hospital begins after Dodson's hire and differs somewhat from Defendant's account.  She notes that a co-worker named Ann Haley ("Haley") filed a complaint about her in November 2007, and that Dodson "wrote up" Plaintiff without any investigation into the matter, which turned out to be false and should have been deleted from her file but wasn't.  ((Paper 1, at 3-4).  Defendant refutes this characterization of the events and maintains that Haley actually issued three separate complaints about Plaintiff: one in September, one in October and one in November 2007.  (Paper 15, at 4).  Each complaint dealt with a separate incident and a copy of each complaint is attached to Defendant's motion for summary judgment.  (Paper 15, Attachments 14, 15, 16.).  Haley's final complaint on November 21, 2007 was in fact crossed out with the words "delete" by it on the incident report.  However, the incident report form that Dodson filled out also referred to an additional incident and so the report remained in Plaintiff's file.

On November 21, 2007, Aminita Cherife-Sankhon, a new employee, complained that Plaintiff refused to assist her in training or to respond to her questions, and stated that Plaintiff was "disruptive."  (Paper 15, at 5; Paper 15, Attachment 16).  Defendant held a counseling session with the two workers and an independent observer, Brad Swanson

3

("Swanson") to remedy the problems.    According to Swanson, Plaintiff refused to answer her co-worker's questions and would only refer her to Dodson.   Swanson wrote a report on the session in which he stated that he found Plaintiff to be resentful and somewhat disrespectful and said that Plaintiff "did not provide training that she was asked to provide given the directive by Mindy [Dodson]." (*Id.*).

In response to this report, on November 29, 2007 Plaintiff prepared a "personality poll" and asked other employees whether they agreed with the report.  (*Id.*; Paper 1 ¶ 9).   Because of this act of "insubordination," Defendant suspended Plaintiff for three days.  (*Id.*).   Plaintiff then registered a complaint about the suspension to the Hospital's Complaint Review Process, and the four members of the Committee unanimously found that Plaintiff violated Hospital policies and upheld the suspension. (*Id.*; Paper 15, Attachment 18).

Plaintiff's 2007 performance evaluation was 50 points lower than her evaluation from the previous year. The evaluation was prepared by the same supervisor, John Wojtowycz ("Wojtowycz"), and explained in detail why her final score was lower.  (Paper 15, at 5).  In late January 2008, Plaintiff was issued a verbal warning for being late on five dates that month.  (Paper 15, at 7; Paper 15, Attachment 8).

On February 11, 2008, a co-worker informed Dodson that he was having a "difficult time getting Plaintiff to cooperate and respond to OR requests." (Paper 15, at 6). On February 25, 2008, a co-worker told Dodson that Plaintiff was "difficult to work with and he was tired of hearing her complain." (*Id.*).

On March 3, 2008, Plaintiff was reprimanded for two unscheduled absences at work. (Paper 15, at 7). Plaintiff says that she had a doctor's note for one of the absences and that a director informed Dodson that her write up of Plaintiff was incorrect. (Paper 1 ¶ 13). On March 24, 2008, Plaintiff was issued a warning for tardiness on four days. (Paper 15, Attachment 8).

On March 17, 2008, a nursing manager, Mary Bevard, complained to Wojtowycz about Plaintiff's behavior while transporting a patient. (Paper 15, at 6). According to the complaint, Plaintiff and one other technologist were transporting a patient by stretcher and rammed into a door so hard that she broke the handle that raises and lowers the head of the bed. The patient had also complained about the collision. (Paper 15, at 6; Paper 15, Exhibit 17).

On April 9, 2008, Plaintiff and Defendant severed their employment relationship. Plaintiff alleges that she was constructively discharged; Defendant argues that she voluntarily resigned. The agreed upon facts indicate that Plaintiff was at

work early and began to eat her lunch.  Her shift began at 1:00 p.m.  Plaintiff says that at 12:50 p.m. or 12:55 p.m., Dodson approached her and asked her to go to the Emergency Room to help, because it was busy.  (Paper 1 ¶ 17; Paper 15, at 7).  She says that she was not clocked in at the time that Dodson approached her.  Defendant presents Dodson's deposition stating that Plaintiff was indeed clocked in.   (Paper 15, at 7).  Plaintiff told Dodson that she was not yet "on the clock," but if Dodson would allow her to clock in early then she would go to the Emergency Room to help.  (Paper 1 ¶ 17).  Dodson then told Plaintiff to see her in her office, and she left.  (Paper 15, at 7).

Plaintiff says that when she walked to Dodson's office, she heard Dodson say "finally she's out of here" and saw her throw her hands in an upward motion.  (Paper 20, at 7).  After presenting herself to Dodson, Plaintiff was told to go see Wojtowycz.  Close to thirty minutes later, Wojtowycz came to get Plaintiff and took her to the Human Resources Department, where Dodson was already sitting.  Plaintiff alleges that at this point, the Human Resources Director, Delace Burch, told her that the Hospital was going to discharge her.  (*Id.*).  Plaintiff alleges that at this point, she took a piece of paper from her bag and wrote out a resignation statement and handed it to Burch, who said that she would accept it as a resignation.

6

Plaintiff said it was an "involuntary resignation." (*Id.*). Burch and Wojtowycz agreed, and they shook Plaintiff's hand and she left the building. (*Id.*; Paper 1 ¶¶ 17-18).

Plaintiff filed a charge of discrimination on May 26, 2008 with the Maryland Commission on Human Relations and the Equal Employment Opportunity Commission ("EEOC") that alleged only retaliation. (Paper 15, Attachment 2). On June 4, 2008, the EEOC issued a Dismissal and Notice of Rights stating that it was unable to conclude that the information provided established any violation of the statute. On July 17, 2008, the EEOC issued a Notice of Charge stating that it had received documentation from Plaintiff for a second charge of discrimination. (*Id.*) The Notice did not note race, gender or retaliation. This Notice is the only evidence of a second charge filed by Plaintiff in this matter. On August 29, 2008 Plaintiff filed a complaint in this court. After discovery was complete, Defendant filed a motion for summary judgment on August 10, 2009. (Paper 15). Plaintiff responded in opposition on September 14, 2009. (Paper 20). Defendant replied on October 10, 2009 (Paper 23) and filed a supplemental reply on November 5, 2009. (Paper 26).

Defendant maintains that the race and sex discrimination Title VII claims should be dismissed for lack of subject matter jurisdiction because Plaintiff has not exhausted her

administrative remedies under Title VII.  Defendant argues that the court should grant summary judgment to Defendant for the remainder of Plaintiff's claims because no reasonable jury could find for Plaintiff and no genuine issues of material fact remain.

## II. Motion to Dismiss Title VII Race and Sex Discrimination Claims

Plaintiff alleges that Defendant violated both 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq* ("Title VII"), by (1) discrimination based on her race and gender, (2) retaliation and (3) continuing harassment.  (Paper 20, at 6-7).  The same framework governs Title VII, § 1981 and § 1983 claims, and therefore the analysis may be done simultaneously.  *Lightner v. City of Wilmington*, 545 F.3d 260, 263 (4th Cir. 2008).  In order to prove subject matter jurisdiction for Title VII claims in federal court, a plaintiff must first exhaust his administrative remedies.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Section 1981 has no such requirement.  Therefore, the court first turns to Plaintiff's Title VII claims to establish subject matter jurisdiction.

### A.   Standard of Review

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1).  The plaintiff bears the

burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768. "[B]ecause of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*." *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997).

**B.  Analysis**

Title VII makes it

> an unlawful employment practice . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. 2000e-2(a)(1).

Before a plaintiff may file suit under Title VII, she is required to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  *See* 42 U.S.C.

2000e-5(f)(1).  The charge must be in writing and verified under oath or affirmation under penalty of perjury.  See *Edelman v. Lynchburg College*, 535 U.S. 106, 112 (2002).  The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents. *Jones v. Calvert Group Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).  Failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim. *Id.*  The initial inquiry under any Title VII claim must be to ensure that all administrative prerequisites have been fulfilled, before moving to the merits of the claim.

Defendant has moved to dismiss Count I (for race and gender discrimination under Title VII) for failure to exhaust administrative remedies.  Defendant argues that the complaint exceeds the scope of the EEOC charge filed by Plaintiff. Plaintiff filed a charge of discrimination ("charge") with the EEOC on May 26, 2008.  (Paper 15, Attachment 4).  Eight days later, on June 4, 2008, the EEOC issued her a right to sue letter and dismissed the charge.  (*Id.*).  Plaintiff's charge of discrimination checked the box for "retaliation" but not for race or gender or "continuing action discrimination."  (*Id.*). She provided a narrative on the charge that listed several of the incidents that occurred while she was employed at the

Hospital, but she did not discuss any discrimination based on gender or race in the narrative.  She noted that:

> . . . Nothing was done to address the harassment, disciple, (sic) and hostile work environment that I was subjected to. (sic)
>
> I believe I was subjected to harassment, discipline, suspension, hostile work environment, and constructive discharge for complaining of a protected activity in violation of Section 704(a) of the Civil Rights Act of 1964, as amended.

(Paper 15, Attachment 4).  Plaintiff filed an additional charge with the EEOC on July 17, 2008.  The "Notice of Charge of Discrimination" sent to Defendant did not attach the actual charge, and only noted that the EEOC had received documentation "constituting a minimally sufficient charge of discrimination." (*Id.*).  The form did not indicate which statute the charge of discrimination had been filed under, did not check the box for race or gender discrimination, and said that no action was required at that time.  (*Id.*).  Though the form said that within 45-60 days "a perfected charge" would be forwarded to Defendant for response, no such charge was ever sent to Defendant.  (*Id.*). To date, Plaintiff has failed to provide any additional information on the additional charge.

Title VII requires, and the United States Court of Appeals for the Fourth Circuit ("fourth circuit") has held, that the scope of a judicial complaint is limited to allegations in the

EEOC administrative charge. *Jones*, 551 F.3d at 300. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.*(citing *Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)(internal quotations omitted)).

Generally, a "claim in formal litigation will be [] barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Id.* In *Jones v. Calvert*, the plaintiff filed several EEOC charges before filing a judicial complaint. Her judicial complaint alleged that she was terminated in violation of Title VII because of her race and sex and in retaliation. *Jones*, 551 F.3d at 299. Her EEOC charge, however, only alleged retaliation: it did not check the box for gender or race. *Id.* The fourth circuit ruled that the plaintiff had failed to exhaust her administrative remedies with regard to the race and sex discrimination claims and therefore, those claims had to be dismissed for lack of subject matter jurisdiction. *Id.* at 301.

In the instant case, Plaintiff similarly failed to check the box for "gender" or "race" and only checked the box for retaliation. Furthermore, in her narrative on the charge, she

does not reference any sex or race discrimination.  Just as in *Jones*, the Plaintiff in this case has failed to exhaust properly her administrative remedies with regard to her charges of race and sex discrimination in violation of Title VII.  The court therefore lacks subject matter jurisdiction over these claims and they must be dismissed.

### III. Motion for Summary Judgment

Two causes of action survive the dismissal and must be analyzed on the merits: Plaintiff's Count II for retaliation in violation of Title VII, and Count III for violation of 42 U.S.C. § 1981 for race and sex discrimination (hostile work environment, disparate treatment).

### A.   Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v.*

*Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett*, 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

**B.    Retaliation Claim**

Title VII prohibits an employer from retaliating against an employee who exercises her Title VII rights.   *See* 42 U.S.C. § 2000e-3.   The Supreme Court and the fourth circuit have found that retaliation is a form of "differential treatment subsumed in the antidiscrimination language of Section 1981."   *Aleman v. Chugach Support Services, Inc.*, 485 F.3d 206, 213-214 (4th Cir, 2007)(referencing *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 174-75 (2005)).   The fourth circuit has "held that a plaintiff can prove illegal retaliation under . . . § 1981 in the same manner as he establishes retaliation under Title VII." *Id.*(citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)).

In the instant action, Plaintiff complains of retaliation in response to an internal complaint that she filed on January 14, 2008. (Paper 20, at 19).   Defendant argues that Plaintiff's action was not a protected activity. (Paper 15). Plaintiff's memorandum stated:

> I am seeking CRP [Complaint Review Process] because I believe my superiors did not ensure that my basic rights as an employee of DCH were respected and I was not treated with respect.   (I was told that all my emails are ignorant basically I was called ignorant by a supervisor). *** 2.   I was given three (3) frivolous written counseling that I my opinion (sic) violates the policies and guidelines for written counseling, also they are all base on

> hearsay (sic) and at the time of the
> warnings had no documentation or
> investigation. This appears to be personal
> and discriminatory.

(Paper 20, at 19). Plaintiff alleges that after filing this complaint, Dodson disciplined her disproportionately to her co-workers for being tardy, and that her "retaliatory animus was demonstrated" when she finally fired Plaintiff because Dodson stated "finally she is out of here." (*Id.*). Plaintiff also maintains that she was constructively discharged, and that she did not voluntarily resign but was, in effect, terminated. She points to a denied unemployment claim as support of her contention.

Defendant argues that neither the filing of the internal complaint, nor any other alleged comments that she made to the Human Resources Director, can be construed as protected activity. Specifically, Defendant maintains that Plaintiff never told the Human Resources Director that Dodson treated her differently because of her race. (Paper 15, at 37). Defendant further argues that Plaintiff cannot make a claim for retaliatory discharge because she resigned and was not terminated.

To establish a claim of retaliation, Plaintiff must show that: (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) there was

a causal connection between the protected activity and the adverse employment action. *See Davis v. Dimensions Health Corp.*, 639 F.Supp.2d 610, 616 (D.Md. 2009); *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). "Plaintiff's burden to establish a *prima facie* case is 'not onerous' and only requires that a plaintiff prove each element by a preponderance of the evidence." *Davis,* 639 F.Supp.2d at 617(citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If Plaintiff can make such a showing, the burden then shifts to the employer to offer a non-discriminatory basis for the adverse employment action. *Matvia v. Bald Head Island*, 259 F.3d 261, 271 (4th Cir. 2001). "The employee then has the opportunity to prove that the asserted reason is pretextual." *Davis,* 639 F.Supp.2d at 617(citing *Matvia*, 259 F.3d at 271)(*See also Smith*, 202 F.3d at 248 ("The *McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII.")).

To satisfy the first element of retaliation, protected activity by an employee, the plaintiff must show either "opposition" or "participation." *Davis,* 639 F.Supp.2d at 617. The protected activity must either oppose a practice prohibited under Title VII (pursuant to the opposition clause); or make a charge, testify, assist, or participate in an investigation, proceeding, or hearing under Title VII (pursuant to the participation clause). *Rachel-Smith v. FTDATA, Inc.*, 247

17

F.Supp.2d   734,   747   (D.Md.   2003).   "Opposition   activity
encompasses   utilizing   informal   grievance   procedures   as   well   as
staging   informal   protests   and   voicing   one's   opinions   in   order   to
bring   attention   to   an   employer's   discriminatory   activities."
*Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th
Cir.   1998).   Activities   that   constitute   participation   are
outlined   in   the   statute:   (1)   making   a   charge;   (2)   testifying;
(3)   assisting;   or   (4)   participating   in   any   manner   in   an
investigation,   proceeding,   or   hearing   under   Title   VII.   *Id.; see
also* 42 U.S.C. § 2000e-3(a).   A plaintiff must have engaged in a
protected   activity,   which   has   a   causal   connection   to   the
retaliation   he   complains   of   to   the   court.   To   find   a   causal
connection,   "the   employer   must   have   taken   the   adverse   employment
action   because   the   plaintiff   engaged   in   a   protected   activity."
*Dowe v. Total Action against Poverty in Roanoke Valley*, 145 F.3d
653, 657 (4th Cir. 1998).

Plaintiff   claims   that   her   filing   of   the   complaint   for   the
complaint   review   process   was   a   protected   activity.   She   also
alleges   that   the   fact   that   she   was   terminated   after   only   one
insubordination   warning   shows   Defendant's   retaliatory   "animus."

Plaintiff   cannot   show   that   she   was   engaged   in   a   protected
activity,   or   that   the   filing   of   the   complaint   has   a   causal
connection   to   any   adverse   employment   action.   Plaintiff   never
verbally   told   Wojtowycz   that   Dodson   treated   her   differently

because of her race or sex, and in her formal complaint she does not mention discriminatory treatment based on race, gender or any protected classification.

Furthermore, the only three actions that could even possibly constitute adverse actions are the lowering of the Plaintiff's evaluation by 50 points from the previous year, her suspension in January 2008, and the alleged discharge in April 2008.  There is no causal connection between any of these events and the Plaintiff's complaint.  The three-day suspension was the subject of the complaint, and therefore could not have been retaliatory.  And, though the alleged constructive discharge took place after the suspension it was several months later after several intervening incidents.  Finally, the lowering of the evaluation score was before the complaint and therefore could not have been done in retaliation for her complaint.

Finally, Defendant has provided ample evidence of its non-discriminatory and non-retaliatory reasons for the discharge and for the suspension.  Plaintiff is unable to show that these reasons are merely a pretext for underlying discriminatory or retaliatory behavior.  No reasonable factfinder could find that Plaintiff suffered from retaliatory actions by Defendant.

**C.   Section 1981 Race and Sex Discrimination Claims**

Plaintiff's remaining claims are for gender and race discrimination under 42 U.S.C. §1981 ("Section 1981").  In her

complaint, Plaintiff alleges that Defendant violated Section 1981 (1) by creating a hostile work environment, (2) by subjecting her to disparate treatment, and (3) by terminating her under false pretenses.  (Paper 1 ¶ 36).  Each of these allegations is dealt with below.

Section 1981 reads that

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  Traditionally, 1981 has been used to redress racial discrimination.  *Ana Leon T. v. Federal Reserve Bank of Chi.*, 823 F.2d 928, 931 (6th Cir. 1987).

To prevail on her hostile work environment claim, Plaintiff must show that

> (1) the harassment was unwelcome; (2) the harassment was based on his [or her] race [or sex]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of the employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

*Wang v. Metropolitan Life Insurance Co.*, 334 F.Supp.2d 853, 862 (D.Md. 2004)(citing *Mackey v. Shalala*, 80 F.3d 954, 959 (4th Cir.

1996)).  Additionally, the "standard for proving an abusive work environment is intended to be a very high one because the standard is designed to filter out complaints attacking 'the ordinary tribulations of the workplace.'"  *Id*. at 864.

> Courts determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2005)(omitting internal citations)(citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).  The circumstances in this case do not rise to the level of a hostile work environment: indeed, there is no evidence of any racial or sexual epithet, much less ongoing racist or sexist conduct. Plaintiff lists a series of discreet incidents having to do with her behavior at work, and discipline related to tardiness, absenteeism and insubordination.  There is nothing to suggest that these incidents were in any way racist or sexist, and the facts alleged are not enough to support a case for hostile work environment.

Plaintiff also alleges she was disciplined more harshly than her white male colleagues.  To establish a prima facie case for disparate treatment, Plaintiff must show "(1) that [she]

engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008)(citing *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985) (adapting the *McDonnell Douglas* framework for the employee discipline context)). Plaintiff seeks to establish a prima facie case of race and gender discrimination by pointing to white comparators who she alleges were disciplined less harshly for more egregious violations.   She complains that Dodson called her ignorant, lowered her performance appraisal and disciplined her more harshly than caucasian coworkers. (Complaint ¶ 36).

Defendant admits that Dodson called an email that Plaintiff wrote "ignorant," but it denies that Dodson ever called Plaintiff herself ignorant.   There is no basis for believing that this remark was racially motivated in any way.

Defendant also explains that Plaintiff's 2007 performance evaluation was written by the same supervisor who evaluated her in 2006, John Wojtowycz.   In 2007 she received a score that was 50 points less than she received in the previous year.   (Paper 15, at 5).   Wojtowycz explained the drop in her rating by saying that Plaintiff needed to become more proficient in operating

computed radiography equipment and that she needed to take a more "proactive role in transporting patients back if they waited more than 15 minutes and to ensure that calls for patients to be brought to Radiology were followed in a timely manner." (Paper 15, at 6; Attachment 10, at 6). These concrete reasons for a downward shift in Plaintiff's performance evaluation are not discriminatory in any way.

Plaintiff also cannot show that she was disciplined more harshly because of her race and/or gender. She points to one co-worker in particular, Scott Larson, and says that he should have been terminated after being absent 3 days over a period of 8 days, according to Hospital policy. (Paper 20, at 15). She also alleges that she was terminated for a single act of alleged insubordination, when Larson was not terminated until after his third incident. (Plaintiff attaches many of Larson's written warnings as exhibits.) During the one-year period prior to his termination, Larson received very similar discipline to that which Plaintiff received. For his first incident of unprofessional conduct, he received a written reprimand. (Paper 20, Attachment B). For his second incident, on December 1, 2008, he received another, along with a three day suspension. He received a third written reprimand on March 13, 2009 and was terminated. Plaintiff also received a written reprimand for her first incident, and for her second incident received a three-day

suspension in November 2007, for circulating a "personality poll." Between December 2007 and April 2008, she received written warnings on December 12, 2007; January 28, 2008; March 3, 2008, March 24, 2008 and March 28, 2008. (See Attachments to Paper 15).

Defendant argues that Plaintiff voluntarily resigned. If, however, she was discharged, it would have been for more than one incident of insubordination. As noted above, Defendants attach, and Plaintiff has confirmed, a series of disciplinary issues, several of which involve insubordination. It is clear that Plaintiff did not have a good relationship with Dodson or with Defendant and that her days at the Hospital were limited. None of the written warnings display any signs of discrimination.

Plaintiff also argues that Defendant's actions regarding her unemployment benefits support the view that she was terminated. She alleges that Defendant disputed Plaintiff's claim for unemployment benefits and reported that Plaintiff was terminated for insubordination. (Paper 20, at 8). Defendant has attached the State of Maryland Request for Separation Information filled out by Delace Burch ("Burch") at the Hospital. In the section asking for the reason for the separation Burch wrote "Quit-personal reasons." Under the comments section she wrote "Voluntary Resignation of 4/9/08."

(Paper 26, Attachment 2, at 5).   The section quoted by Plaintiff refers to the Determination of the Claims Examiner.   The form notes that Plaintiff was "discharged . . . for alleged insubordination."   Burch avers that this was not information supplied by the Hospital, and was potentially supplied by Plaintiff herself.   (Paper 26, at 2).

While Defendant and Plaintiff may dispute how the separation actually occurred, there is no genuine issue as to why it occurred: Plaintiff's performance record over the previous year had deteriorated significantly, and neither she nor her supervisors were happy.   There is no evidence that Plaintiff was discharged due to discrimination, and the majority of evidence – including Plaintiff's own affidavit – supports the notion that Plaintiff resigned.

Plaintiff's arguments of discrimination are based on drawing inferences from Defendants' responses while she was employed at the Hospital, as there is no evidence of any direct racial or gender discrimination by Dodson or Defendant.   In essence, Plaintiff believes that Dodson (and Defendant) must be racist or sexist because she disciplined Plaintiff more harshly than another employee who was a white male.   This conclusion is not supported by the facts.   Dodson supervised a staff of eighty employees, 80% of whom were African American.   (Paper 15, at 3). Plaintiff has presented no evidence that any other African

25

American employees, or any other female employees, complained of discriminatory treatment on the basis of race or gender.

Plaintiff's inferences are speculation and argument, and there is no evidence anywhere in the record that Dodson or Defendant had any racial or gender animus towards Plaintiff. It does not follow that a manager who disciplines an African American female employee, or is perceived as being harder on her than on other employees, is therefore a racist. There is also no basis in the complaint to conclude that Plaintiff, as a complaining African American employee, was treated differently from a white complaining employee. Indeed, there is no suggestion that any employee other than Plaintiff complained to management about any discipline.

The Supreme Court stated in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision." *Id*. at 148. In this case, Defendant has presented an employee with multiple infractions and repeated discipline problems. Defendants provide credible nondiscriminatory reasons for each incident in the record and therefore, Defendant is entitled to summary judgment.

## IV.   Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted.   A separate Order will follow.

                                        /s/
                              _____
                              DEBORAH K. CHASANOW
                              United States District Judge